471 So.2d 1369 (1985)
NATIONAL EQUIPMENT LEASING, INC., a Florida Corporation, Appellant,
v.
David WATKINS D/B/a Village Quick Stop, Appellee.
No. 83-1357.
District Court of Appeal of Florida, Fifth District.
July 5, 1985.
Malcolm S. Greenfield, Casselberry, for appellant.
No appearance for appellee.
PER CURIAM.
AFFIRMED.
DAUKSCH and FRANK D. UPCHURCH, Jr., JJ., concur.
COWART, J., concurs specially with opinion.
COWART, Judge, concurring specially:
This case involves the question of whether a court of a foreign state may, consistent with constitutional due process, obtain in personam jurisdiction sufficient to support a valid money judgment by service of process on the non-resident debtor under a "long-arm" statute of the foreign state when a non-resident debtor's sole contact or connection with the foreign state is that the debtor has failed to make a contractual payment due to be paid in the foreign state.
Appellee, an individual running a small business in Cartersville, Georgia, leased, for a thirty-six month term, a drink machine from a vending company operating out of Atlanta, Georgia. The transaction was financed as follows: the supplier had the lessee sign a lease with appellant as lessor; the lessor then bought the drink machine from the supplier and received the payments from the lessee as rental. Alleging that the lessee had failed to make rental payments and that the lessor's then principal place of business was in Sanford, in Seminole County, Florida, the lessor sued the lessee in that county and served process on lessee in Georgia under a provision of the Florida long-arm statute, section 48.193(1)(g), Florida Statutes.
The lessee moved to dismiss claiming the court lacked jurisdiction over the lessee and attached an affidavit alleging the entire transaction took place in Georgia and that after the equipment needed servicing and the supplier refused further service without payment lessee returned the machine to the supplier and stopped making rental payments on it. An officer of the lessor corporation filed an affidavit that he had "accepted" various checks of lessee in Sanford, Florida. At a hearing on the motion to dismiss the lessor argued that although the lease is silent as to the place of payment of rental the lease provides that it is to be construed under Florida law;[1] under Florida law the payments are to be made where the payee resides or maintains his principal place of business and that is the proper place of payment and the place where the breach of contract for non-payment occurs,[2] and under section 48.193(1)(g) a person submits himself to the *1370 jurisdiction of the courts of this state as to any cause of action arising from the breach of contract resulting from failing to perform acts required by the contract to be performed in this state. The trial court granted the lessee's motion to dismiss.
The due process constitutionality of the use of a long-arm statute in every instance is based on a determination that a non-resident, such as the lessee in this case, has had such "minimum contacts" with the forum state as to make it reasonable to require the non-resident to go to the forum state to defend a law action resulting from the non-resident's prior "minimum contacts" with the forum state. See International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contact or contacts with the forum state must be such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Id. The contact or contacts must include "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). Due process requires that for use of long-arm service of process in a particular case it must be reasonable to say that the defendant's "connection and conduct with the forum state are such that he should reasonably anticipate being haled into court there." See World Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).[3]
In this day and time all kinds of credit accounts and credit based agreements require consumers to make payments to addresses in states far removed from that in which the consumer resides and in which the transaction occurs. When the average, reasonably intelligent person without legal training agrees at his own home or place of business to buy or lease something which is delivered to him there and concerning which he is to make payments to some person or company in a distant state, that person has not invoked the benefits or protection of the laws of the distant state and that person cannot reasonably be expected to anticipate and understand and impliedly agree (1) that he can be sued in the foreign state and (2) that it is reasonable to expect that he can defend the action in the foreign state at all or without great inconvenience.
Unless the obligation provides otherwise or fails to specify a place of payment, the place of payment of money is where the payee directs. Furthermore, almost all choses in action and contractual arrangements providing for the payment of money by one party to another are assignable at will by the payee. Indeed that attribute is necessary in all negotiable instruments. When the original payee changes his residence or principal place of business or redirects the place of payment or when he assigns the contract providing for payments, the money, of course, is then payable wherever the original payee may direct, reside or do business at the time of each payment or wherever any assignee may direct or reside or have its principal place of business. A judicial holding that solely by failing to make contractual payments due in any foreign state the payor impliedly consents to submit himself to the jurisdiction of such foreign state and impliedly agrees that it is reasonable to expect him to defend law actions in such foreign *1371 state, exceeds the bounds of common sense and reason and of constitutional due process.[4] To hold as a matter of law that it is consistent with basic American concepts of state territorial jurisdiction and constitutional due process that under long-arm statutes citizens of all states are subject to the jurisdiction of any foreign state where they are contractually obligated to make payments of money would mean that all members of the Book-of-the-Month Club, Inc. in all states are personally subject to the jurisdiction of the state courts of Pennsylvania and that the law thinks it is reasonable to expect all non-residents to defend actions brought against them there. It would also mean that all companies issuing credit cards or otherwise extending credit interstate may lawfully sue in the one state that is the payment collection center for those companies and there recover valid personal money judgments against all non-resident debtors. It is not reasonable to hold as a matter of law that the Georgia citizen in this case expected to be sued and expected to be required by law to defend a lawsuit in Florida when he rented a drink machine in Georgia from an Atlanta supplier merely because rental payments were to be made to a lessor whose principal place of business was in Florida. To protect the citizens of Florida from a similar unreasonable and unconstitutional burden, under principles of comity, due process, equal protection and the golden rule, the courts of this state must place a similar limitation on the use of the long-arm statute in this state. Where a non-resident debtor's only contact with a forum state is that he did not pay money that, contractually, he owed and should have paid in the forum state, other courts have held that the debtor had insufficient contacts with the forum state to satisfy due process standards. See, e.g., Ridge v. Farina, 461 So.2d 1018 (Fla. 4th DCA 1984).[5]
*1372 The most interesting point presented is whether this case is distinguishable from Kane v. American Bank of Merritt Island, 449 So.2d 974 (Fla. 5th DCA 1984). Kane can be distinguished. In Kane, the continuing loan guaranty agreements, while in fact executed outside the State of Florida by non-resident guarantors, each stated that it was executed "at Merritt Island, Florida," and was executed solely to induce a specific bank on Merritt Island, Florida, to make loan transactions within this state. The loan guaranties were not solicited by the bank and had no legal efficacy independent of the loan transactions they guaranteed. Essentially, the guaranties in Kane were but collateral aspects of the basic loan transactions, the situs of which were, to the guarantors' certain knowledge, entirely within this state.
Under the most restrictive view of the concept of forum non conveniens a company actively soliciting and transacting interstate business with a consumer in a foreign state (National Equipment Leasing, Inc., in this case) should be required to go there to litigate disputes arising out of those business transactions. See generally Gerard v. Pisces Sales and Marketing, Inc., 425 So.2d 209 (Fla. 4th DCA 1983), and Newton v. Bryan, 433 So.2d 577 (Fla. 5th DCA 1983).
This case should be affirmed for these reasons.
NOTES
[1] The fact that a contract clause calls for the application of Florida law is not a significant factor in "minimum contact" due process analysis, especially where, as here, the clause is part of the lessor's standard lease form. The lessor and lessee in the instant case did not agree to submit to the jurisdiction of a Florida court in the event of a dispute. It is a significant factor if parties to a contract agree to submit to the jurisdiction of a chosen forum. See Maritime Ltd. Partnership v. Greenman Ad. A., 455 So.2d 1121 (Fla. 4th DCA 1984).
[2] The lessor is correct that under Florida venue law when a contract requires the payment of money but does not specify its place of payment the money is deemed payable at the creditor's residence or office where it transacts its customary business, and it is there the cause of action accrues for breach of contract for failure to pay the money. See Carter Realty Co. v. Roper Bros. Land Co. Inc., 461 So.2d 1029 (Fla. 5th DCA 1985). However, the point is not why or how the money that the action seeks to recover is due in Florida but whether the fact that money due in Florida is not paid is a constitutionally sufficient minimum contact in this state. Therefore it does not matter whether the lease did or did not provide for rental payments to be sent to the lessor in Florida or that some such payments were actually mailed by someone from Georgia to Florida although those questions of fact were resolved against the lessor by the trial court's ruling.
[3] However, the element of "foreseeability" has never alone been a sufficient benchmark for personal jurisdiction under the due process clause. World Wide Volkswagon, supra.
[4] The Second District in Madax International Corp. v. Delcher Intercontinental Moving Services, Inc., 342 So.2d 1082 (Fla. 2d DCA 1977), held that a court of this state acquired jurisdiction over an Oregon corporation where the local corporation's action was based on a breach of contract resulting from the foreign corporation's failure to make payment in Florida for services rendered by the local corporation. Implicit in the court's opinion is the notion that the due process "minimum contacts" test is satisfied when suit is brought against a foreign corporation under the long-arm statute's breach of contract subdivision and the obligation to make payment to a local corporation at its local address is the foreign corporation's sole obligation that is to be performed in this state, and the foreign corporation's failure to make payment is the sole omission which causes the contract to become breached. However, in Lakewood Pipe of Texas, Inc. v. Rubaii, 379 So.2d 475 (Fla. 2d DCA 1979), the Second District was not so willing to find that a court in this state had jurisdiction over a foreign corporation where the foreign corporation was merely assigned certain contractual rights and obligations of a Florida corporation, including the obligation to pay any brokerage commission which might have been due in connection with the contract. After a broker asserted his claim for brokerage services in connection with the contract, and brought suit in Florida to invoke the guarantee of the brokerage obligations by the foreign corporation as assignee, and the lower court denied the foreign corporation's motion to quash service, the Second District reversed and held that the guarantee of a contractual obligation requiring payment to be made to a creditor in Florida did not constitute sufficient contacts with Florida to permit this state to exercise jurisdiction over the assignee under Florida's long-arm statute. But cf. DeMarco v. Cayman Overseas Reinsurance Assoc., Ltd., 460 So.2d 547 (Fla. 1st DCA 1984).
[5] Minnesota courts have been particularly sensitive to the principles of comity, due process, and the golden rule. In Dent-Air, Inc. v. Beech Mountain Air Service, Inc., 332 N.W.2d 904 (Minn. 1983), cited in Mid-West Med. v. Kremmling Medical Surgical, 352 N.W.2d 59 (Minn.App. 1984), the plaintiff lessor brought an action in Minnesota against a foreign lessee. The lessor from Minnesota had advertised nationally to lease a plane. The lessee, who was from North Carolina, responded and the lessor flew to North Carolina to negotiate the lease. The lessee signed the lease and sent it to Minnesota. The lessor and lessee later entered into two more leases for two other airplanes. All three planes were delivered outside of the forum state (Minnesota). All leases provided for return of the planes in the forum state, for payment of rent in the forum state, and for the forum state's law to govern the lease. The Minnesota Supreme Court found that the lessee did not have the requisite "minimum contacts" with the forum state which would permit the constitutional exercise of personal jurisdiction over them in the forum state because the lessee did not purposefully avail itself of the benefits and protection of the forum state's law. Other good cases from Minnesota include Mid-West Med., supra, and Fingerhut Gallery, Inc. v. Stein, 548 F. Supp. 206 (D.Minn. 1982).